IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FERMIN JOSEPH VASQUEZ,<br><br>Defendant. | CR 21-66-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Fermin Vasquez' Motion to Suppress. (Doc. 30). Vasquez seeks to suppress all evidence and incriminating statements obtained from an investigatory stop and subsequent detention that occurred on April 27, 2021. (Doc. 31 at 1). The Court held a hearing on the motion on March 3, 2022. (Doc. 39). After reviewing the testimony presented at the hearing and exhibits submitted by each party, the Court grants the motion for the following reasons.

I.   **Facts**

On April 27, 2021, at 5:39 p.m., the Billings Police Department received a call from an individual, who described a strange man walking down the street. (Doc. 36). According to the caller, the man was walking south on 12th St. W., toward Lewis Ave. and had what appeared to be a gun wrapped in a blanket crosswise over his shoulder. The caller was additionally concerned by the man's

1

attire: he was wearing a black jumpsuit and a red bandana covering all his face, with only eyeholes cut out. The caller said the man kept peeking at the weapon, apparently trying to cover it better with the blanket.

Dispatch put out a "high priority" call, to which three officers responded, including Officer Brandon Lange. Dispatch notified Lange of the suspect's description, and Lange set out to the location. On the way, several more citizens told Lange there was a suspicious man with what appeared to be a gun walking down the street. Lange pulled up behind a man precisely matching the description and observed him doing lunges with the object across his shoulders. Lange activated his lights and pulled to the curb, while Officers Romero and Unruh followed. Lange exited his vehicle, hand hovering over his service weapon, and ordered the suspect to put down the gun. Lange had to ask several times in succession before the suspect complied and put his hands up. The officers immediately moved toward the man and put him in handcuffs. During subsequent questioning, the man identified himself as the Defendant and gave contradictory statements about where the gun came from. The gun was later identified as a Savage rifle.

## II.   Legal Standards

Under the Fourth Amendment, a police officer may conduct a brief investigatory stop of a person if the officer possesses a reasonable, articulable

suspicion that criminal activity is occurring or has occurred. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The officer must be able to articulate a minimal level of objective justification, but the standard is considerably lower than a preponderance. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The officer must have a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Officers are allowed to draw common-sense inferences from the observed behavior to develop reasonable suspicion. *Id.* at 277. The Government has the burden of providing "specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct" in order to justify reasonable suspicion. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000); *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

The Court assesses the totality of the circumstances surrounding the stop to determine whether an officer possessed reasonable suspicion. *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989). The Court evaluates the totality of circumstances objectively and disregards an officer's subjectivity. *United States v. Willis*, 431 F.3d 709, 716 (9th Cir. 2005). The Supreme Court has required suspicion only of "criminal activity," not necessarily a specific crime. *United States v. Arvizu*, 534 U.S. 266, 277 (2002); see also *United States v. Pack*, 612 F.3d 341, 356 (5th Cir. 2010). Circumstances that may contribute to a finding of reasonable suspicion include

3

extreme nervousness, *Pack*, 612 F.3d a 345, high crime areas, *United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002), and evasive movement, *Sokolow*, 490 U.S. at 8.

### III. Analysis

The issue here is whether officers possessed reasonable suspicion, sufficient under *Terry*, to conduct an investigatory stop of Vasquez. The Government concedes that the stop was in fact a *Terry* stop. (See Doc. 34 at 14). The officers stopped Vasquez immediately when they exited their vehicles and commanded Vasquez' compliance.[1] The officers stopped Vasquez based on several eyewitness reports of a person dressed oddly with what appeared to be a concealed weapon over his shoulder. The Government correctly points out that these tips were likely reliable and were corroborated. At the hearing, Officer Lange reiterated that he found the situation as a whole "very suspicious" and "strange."

While Vasquez was indeed acting strangely, for the stop to be valid, his conduct must be indicative of criminal behavior. The Court here simply cannot bridge the connection between the conduct here that is suspicious or odd in the lay sense to conduct that is suspicious such that it indicates particular criminal behavior. A burglar or thief would not walk down the street in a strange and

---

[1] Given the Court's holding that the *Terry* stop was improper, the issue of precisely when the stop ripened into a seizure is not implicated.

noticeable costume nor draw attention to himself by doing lunges down the main sidewalk.

The Supreme Court has cautioned that the "totality of the circumstances" standard imposed by *Terry* and its progeny makes a bright-line test difficult to impose but recognized that "the factual 'mosaic' analyzed for a reasonable-suspicion determination" may be useful in comparing cases. *Arvizu*, 534 U.S. at 275. In *Wardlow*, the Supreme Court held that officers justifiably concluded that reasonable suspicion existed when a suspect in a high-crime area took off running at the sight of the police. 528 U.S. at 124. But here, Vasquez made no attempts to avoid the officers or evade suspicion—he did not run or change pace, he was walking down the usual path for pedestrians between one part of town and another, and he was not behaving in a manner indicative of criminal intent, such as brandishing the weapon or casing houses or businesses. See also 4 Wayne R. LaFave, *Search & Seizure* § 9.5(e) (6th ed.) (2021 Update). Likewise, there was no testimony or evidence presented that 12th and Lewis is an especially high-crime area, particularly during daylight hours immediately after the workday. Unlike in *Terry*, where the individuals were walking back and forth between a shop window and conferring in between, 392 U.S. at 22, Vasquez was walking down the block at a consistent pace and was not acting suspiciously toward his surroundings. Neither of the tipsters indicated that they saw Vasquez commit any crimes or do anything

beyond walking down the street wearing a jumpsuit and a mask with a concealed gun over his shoulder.

The Montana legislature saw fit to remove almost all strictures on the concealment of firearms by nearly any individual. HB 102, 67th Leg., Reg. Sess. (Mont. 2021) (effective Feb. 19, 2021). The bill, among other things, eliminates nearly all the previous circumstances and locations where a concealed weapon could be properly prohibited. HB 102, §§ 4-10. The legislature defined its purpose and intent as follows:

> **Section 1. Purpose.** The purpose of [HB 102] is to enhance the safety of people by expanding their legal ability to provide for their own defense by reducing or eliminating government-mandated places where only criminals are armed and where citizens are prevented from exercising their fundamental right to defend themselves and others"
> **Section 2. Legislative intent.** It is the intent of the legislature to reduce or remove provisions of law that limit or prohibit the ability of citizens to defend themselves by restricting with prior intent the right to keep or bear arms.

HB 102, § 2.

These changes in law make circumstances such as these difficult because, although an average citizen may wish to have the police stop and question an individual patrolling the streets with a weapon, the Fourth Amendment requires there be at least some nexus to criminal activity. Although case law does not require that there be no innocent explanation for the conduct, *see Arvizu*, 534 U.S. at 277, here there were no allegations by any of the citizens or the officers that a crime was being committed or was imminent. Officer Lange testified that it is not

6

illegal to have a weapon or a concealed weapon on one's person walking down the street.

The Government asserts that it was reasonable for police to suspect wrongdoing due to the nature of the complaint, but the Court cannot make that logical leap. Vasquez' behavior was peculiar, out-of-place, and possibly indicative of underlying issues such as intoxication (and certainly indicative of poor gun ownership practices). Yet these are not criminal concerns. Without the suspicion of at least some underlying potential crime or criminal activity generally, the Court cannot sanction a *Terry* stop.

## IV. Conclusion

Accordingly, Vasquez' Motion to Suppress (Doc. 30) is GRANTED and all statements and evidence obtained as a result from the stop are suppressed.

DATED this 26th day of April, 2022.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge